**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:

JANE DOE,[1]

      Plaintiff,

v.

WAL-MART STORES, INC.,

      Defendant.

---

**COMPLAINT AND JURY DEMAND**

---

      Plaintiff Jane Doe, by and through counsel, Eudoxie (Dunia) Dickey of CIVIL RIGHTS & EMPLOYMENT LAW ADVOCATES, LLC, respectfully alleges for her Complaint and Jury Demand as follows:

**I.      INTRODUCTION**

      1.      This is a case about Defendant Wal-Mart Stores, Inc.'s ("Wal-Mart" or the "Company") egregious and shocking public disclosure of an employee's most personal and private health information – her HIV positive status – and its subsequent campaign of harassment, discrimination and retaliation against Plaintiff for making complaints regarding its unauthorized disclosure.  Plaintiff, a dedicated and successful Claims/ Receiving Clerk at a Wal-Mart store in Colorado Springs, Colorado, chose to reveal her HIV positive status to two of her

---

[1] In light of the very private nature of the improperly disclosed heath information, Plaintiff intends to file a Motion to Proceed Under Pseudonym.

managers at the Wal-Mart Neighborhood Market to which she transferred in 2012 because she anticipated that she may occasionally require sick time off work in connection with health problems occasionally caused by and/or related to her HIV.  Although Plaintiff is a private person and generally kept her HIV positive status to herself, she trusted her employer to safeguard this information in accordance with federal and state law, as well as Wal-Mart's own privacy policies.  Unfortunately, in approximately June 2013, Overnight Shift Manager Connie Whisenhunt outrageously disclosed and began disseminating rumors to her co-workers who had no need to know that Plaintiff "had AIDS" and even shockingly suggested that they get tested for HIV.  Shortly thereafter, Plaintiff was informed by Store Manager Tammy Cooper and two of her co-workers, Brenda Allen and Sophia Johnson, that this unauthorized disclosure of her HIV positive status had been made and that vicious rumors about her were spreading like wildfire through the store.  Completely shocked, devastated and severely emotionally distressed, Plaintiff felt that her worst fears had been realized, and she dreaded returning to work and facing Ms. Whisenhunt and her co-workers.  As soon as she returned to work, she made official verbal and written complaints through every Wal-Mart channel she could think of – directly to her Store Manager Tammy Cooper, the Wal-Mart Ethics Hotline, Human Resources and even Theft Prevention.  It quickly became apparent that Ms. Whisenhunt was responsible for this egregious breach of Plaintiff's medical privacy, and this fact was confirmed to Plaintiff personally by her co-workers, Ms. Allen and Ms. Johnson.

2.     Instead of taking Plaintiff's complaints seriously, Defendant Wal-Mart conducted a perfunctory, sham investigation, apparently found no evidence of wrongdoing despite multiple written and verbal statements clearly pointing to Ms. Whisenhunt as the perpetrator, and took no corrective action whatsoever with respect to Ms. Whisenhunt, instead choosing to sweep the

matter under the rug and continue business as usual.  Instead, Defendant Wal-Mart transferred Ms. Whisenhunt to the morning shift where Plaintiff worked, installing her as Plaintiff's direct supervisor.  In doing so, Defendant Wal-Mart ratified and rewarded Ms. Whisenhunt's illegal actions by placing her in a position of power over Plaintiff and forcing Plaintiff to work under her tormentor, day in and day out.

3.      Connie Whisenhunt immediately began a vicious campaign of discrimination and retaliation against Plaintiff because of her HIV positive status and because she had lodged protected complaints against her, and even recruited other Wal-Mart employees in her efforts. Ms. Whisenhunt and other management began writing Plaintiff up for countless trumped-up, pretextual "Coachings," as disciplinary write-ups are euphemistically known at Wal-Mart, in an effort to push her out or set her up for possible termination.  She gave her additional tasks and responsibilities while at the same time taking away her support personnel.  Ms. Whisenhunt even directed other Wal-Mart employees to ostracize and not speak with Plaintiff; and she generally subjected Plaintiff to harassment and created a hostile work environment for her.  When Plaintiff eventually filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) in April 2014 regarding Ms. Whisenhunt's illegal disclosure of her private health information and Defendant Wal-Mart's subsequent discrimination and retaliation against her for having made complaints, Defendant Wal-Mart's harassment and retaliation only grew worse.  The stress of working in such a hostile work environment took a devastating toll on Plaintiff's already fragile health, and she took doctor-approved medical leave in October 2014 to work with her doctors on adjusting her medications, reducing her stress level and regaining her health.  Unfortunately, in approximately mid-to-late December 2014, Plaintiff's health had completely collapsed as a result of the relentless stress, harassment and the hostile work

environment she had been forced to face each day at Wal-Mart. While she was out sick battling with life-threatening illnesses, including meningitis, Defendant Wal-Mart wrongfully terminated Plaintiff's employment by sending her a letter on Christmas Eve 2014 indicating that her medical leave was about to expire and giving her an ultimatum to either return to work the following day or face termination. Plaintiff sent a note and indicated to Defendant Wal-Mart that she was too ill to return to work the next day, but she did not intend to resign and hoped to return to work when she regained her health. At this point, Defendant Wal-Mart wrongfully terminated Plaintiff's employment in approximately late December 2014 or January 2015 because of its discrimination against her on the basis of her disability and in retaliation for her multiple protected internal and external complaints in opposition to Ms. Whisenhunt's illegal disclosure of her most sensitive, private health information and Defendant Wal-Mart's subsequent harassment and retaliation against her.

4.  This is an action for discrimination and retaliation under the under Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, *et seq.*, ("ADA") and the Colorado Anti-Discrimination Act, C.R.S. §§ 24-34-401, *et seq.* ("CADA"). Defendant Wal-Mart violated Plaintiff's rights under the ADA and CADA by discriminating against her based on its unauthorized disclosure of her private, protected health information; failing to accommodate her reasonable requests for needed sick time off due to her disability, instead writing her up for "unapproved" absences; and creating a hostile work environment. Defendant Wal-Mart then retaliated against, and ultimately wrongfully terminated, Plaintiff for making a series of internal and external protected complaints in protest of its discrimination against her on the basis of her disability, in violation of her rights under the ADA and CADA.

5.     Plaintiff was and continues to be gravely and permanently financially, physically, emotionally, psychologically and reputationally damaged by Defendant Wal-Mart's numerous unlawful actions.

## II.     JURISDICTION AND VENUE

6.     This action arises under Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, *et seq.*, ("ADA") and the Colorado Anti-Discrimination Act, C.R.S. §§ 24-34-401, *et seq.* ("CADA").

7.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. Jurisdiction supporting Plaintiff's claims for attorney's fees and costs is conferred by 42 U.S.C. § 1988.  Supplemental jurisdiction over Plaintiff's state law claims is invoked pursuant to 28 U.S.C. § 1367.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).  All of the events alleged herein occurred within the State of Colorado, and all of the parties were residents of the State at the time of the events giving rise to this litigation.

## III.     PARTIES

9.     Plaintiff Jane Doe is a citizen of the United States and a resident of and domiciled in the State of Colorado.  At all times relevant to this Complaint, Plaintiff Jane Doe was employed by Defendant Wal-Mart Stores, Inc.

10.     Defendant Wal-Mart Stores, Inc. (referred to herein as "Wal-Mart" or the "Company") is a publicly-held Delaware corporation, with a principal street address of 702 West 8th St., Bentonville, AR 72716.  Wal-Mart Stores, Inc. is registered to do business in the State of Colorado, and its registered agent is located at 7700 E Arapahoe Rd Ste 220, Centennial, CO 80112.  Plaintiff Jane Doe was employed at Wal-Mart Stores, Inc. Store No. 3083, known as the

Wal-Mart Colorado Springs Neighborhood Market located at 665 N. Murray Blvd., Colorado Springs, CO 80915 at all times relevant to this Complaint.  Wal-Mart Stores, Inc. is an "employer" within the meaning of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, *et seq*. and the Colorado Anti-Discrimination Act, C.R.S. §§ 24-34-401, *et seq*.

### IV.    FACTUAL ALLEGATIONS

***Plaintiff Jane Doe Was A Dedicated And Successful Wal-Mart Employee When She Had The Misfortune Of Being Diagnosed With Human Immunodeficiency Syndrome ("HIV") in 2007***

11.    Plaintiff Jane Doe is a 57 year-old, Caucasian woman living in Colorado Springs, Colorado.

12.    Plaintiff become employed at Wal-Mart in Colorado Springs at Wal-Mart Store No. 1200 on February 19, 2007.  Plaintiff successfully and diligently worked for Wal-Mart for nearly eight (8) years as a Receiving/ Claims Clerk until her wrongful termination in December 2014 or January 2015.  She was well-liked and successfully performed her responsibilities and received "Meets Expectations" or "Exceeds Expectations" performance reviews from her supervisors.  Plaintiff loved her job and wished to continue working at Wal-Mart until her retirement, many years in the future.

13.    Unfortunately, in 2007, Plaintiff learned that through no fault of her own, she had been infected with the Human Immunodeficiency Syndrome ("HIV"), and that the HIV was behind the health problems she was then experiencing.  One day in approximately March 2007, while working at Wal-Mart, Plaintiff was informed by an unknown woman that her husband had HIV and that she needed to get tested.  Much to her dismay, Plaintiff's HIV test was positive and she has been living with HIV since that time.  Her diagnosis came as a complete shock to her as she had no known exposures to and was not engaging in any high-risk behavior.

14.     At the time of learning she was HIV positive, Plaintiff was suffering from Acquired Immunodeficiency Syndrome ("AIDS").  However, Plaintiff immediately sought appropriate treatment and within 9 months, the AIDS had subsided, her HIV was undetectable and she was symptom-free.

15.     In light of the social stigma and prejudice which HIV unfortunately still engenders in our society, as evidenced by the events leading up to this Complaint, Plaintiff naturally is concerned with the privacy of her medical condition and is selective with respect to those individuals to whom she chooses to reveal her diagnosis.  Plaintiff is a private person and she had learned from experience that people often treat her differently once they learn that she is HIV positive, and as such, she chooses not to disclose her status freely, particularly in the workplace.

***Upon Plaintiff's Transfer To Wal-Mart Store No. 3083, Plaintiff Elected To Disclose Her HIV Positive Status To Her Employer In Case She Needed to Occasionally Take Time Off Due To Her Health Problems***

16.     Although Plaintiff was happy at her position at Wal-Mart Store No. 1200 in Colorado Springs, in July 2012, she decided to change Wal-Mart stores and transferred to the Wal-Mart Colorado Springs Neighborhood Market (the "Wal-Mart Neighborhood Market"), located at 665 N. Murray Blvd., Colorado Springs, CO 80915, so that she could work closer to home.

17.     Plaintiff decided when she moved to the Wal-Mart Neighborhood Market that she did not want her co-workers to how about her HIV status.  As a Receiving/ Claims Clerk, Plaintiff had no opportunity for potential exposure to others at work and felt that they therefore had no reason to know her protected private health information.  Further, Plaintiff has been thoroughly trained in universal precautions should she become injured at work.

18.     Plaintiff nevertheless wished to inform her new Store Manager, Tammy Cooper, of her HIV positive status, a recognized disability under the ADA, so that she could take time off from work when she was experiencing any illness or health issues related to her HIV.  Therefore, she personally informed Ms. Cooper and the Personnel Manager, Christine (last name unknown) that she was HIV positive.  Plaintiff trusted that Ms. Cooper and Christine (last name unknown) would guard her HIV positive status in accordance with her rights under the ADA and CADA and the Privacy Rule contained in the Health Insurance Portability And Accountability Act of 1993 (HIPAA), as amended, codified in 45 CFR §§160 and 164, Colorado privacy protections and Wal-Mart's own policies.  At the time, Plaintiff felt that both Ms. Cooper and Personnel Manager Christine (last name unknown) had no problem with Plaintiff's HIV positive status, and she did not anticipate any problems with her position and future at the Wal-Mart Neighborhood Market as a result of disclosing her HIV positive status to her supervisors.  Unfortunately, Plaintiff could not have been more wrong.

19.     Plaintiff worked on the early shift, typically arriving at the store at approximately 5:00 A.M. most mornings.  As she had anticipated, there were occasions when she was forced to call in sick due to her health.  These occasional, approved health-related absences apparently upset Connie Whisenhunt, the Overnight Shift Manager, who upon information and belief had made repeated remarks that she was going to transfer Plaintiff to another, less desirable position because she believed Plaintiff called in sick too often.  Plaintiff was upset by these comments and feared that she may suffer adverse employment actions as a result of exercising her rights for reasonable accommodations for her disability under the ADA.  However, Store Manager Tammy Cooper had previously assured Plaintiff that she would not face any discrimination on the basis of her disability, so she tried not to worry.

8

***In Approximately May Or June 2013, Overnight Shift Manager Connie Whisenhunt Wrongfully Disclosed Plaintiff's Sensitive Protected Private Health Information – Her HIV Positive Status – To Her Co-Workers And Began Spreading Rumors That Plaintiff "Had AIDS," In Flagrant Violation Of Plaintiff's Rights Under The ADA, The Privacy Protections Contained in HIPAA and Colorado Law***

20.     At some point prior to approximately May 2013, either Store Manager Tammy Cooper or Personnel Manager Christine (last name unknown), the only two individuals to whom Plaintiff had revealed her HIV positive status, disclosed Plaintiff's HIV positive status – her sensitive protected private health information – to Overnight Shift Manager Connie Whisenhunt, in order to help facilitate Plaintiff's needed sick time off for any health problems caused by and/or related to her HIV.

21.     In approximately May or June 2013, Overnight Shift Manager Connie Whisenhunt, who previously had expressed dissatisfaction with Plaintiff's taking time off from work due to problems with her health, outrageously disclosed Plaintiff's HIV positive status to her co-workers who had no need to know, telling them that Plaintiff "had AIDS" and began spreading rumors about her and even suggested that other employees get tested for HIV, in blatant violation of Plaintiff's rights to privacy under federal and state law, as well as Wal-Mart's own policies respecting employee privacy.

22.     In approximately May 2013, Ms. Whisenhunt told a fellow Wal-Mart employee "I know a place where you can get tested and the workplace cannot get this information.  It will cost you about $250."  Puzzled, this employee asked Ms. Whisenhunt what she was talking about.  Ms. Whisenhunt shockingly responded "[Plaintiff] has AIDS and you need to be tested." This employee was stunned.  Displaying an understanding that her unauthorized disclosure was wrongful, Ms. Whisenhunt then pleaded, "Please, you can't tell anyone I told you about [Plaintiff] because I will be fired."  This employee was astonished at Ms. Whisenhunt's

disclosure and indicated she would not reveal to anyone that Ms. Whisenhunt had disclosed Plaintiff's HIV positive status to her. Around the same time, Ms. Whisenhunt also told at least one other employee, Misty Reynolds, that Plaintiff "had AIDS."

23. As a result of Ms. Whisenhunt's illegal disclosure, and unbeknownst to Plaintiff, word began to spread throughout the store that Plaintiff "had AIDS."

### *Plaintiff Was Shocked, Horrified And Devastated When She Learned Of Ms. Whisenhunt's Unauthorized, Illegal Disclosure Of Her HIV Positive Status*

24. In mid-June 2013, Plaintiff was forced to stay home sick for three (3) days from approximately June 18-20, 2013. During her approved time off, on or about June 20, 2013, Store Manager Tammy Cooper called Plaintiff at home and informed her that there was a "rumor going around on the night shift that you have AIDS." Plaintiff was devastated, in shock and could not believe that her carefully-guarded HIV positive status had somehow been cruelly disclosed to her co-workers. Very few people at the Wal-Mart Neighborhood Market were aware of her diagnosis. Further, while Plaintiff is HIV positive, she does not have AIDS and her HIV has been undetectable since 2007. Plaintiff immediately feared that her coworkers would be scared by the rumor and would now begin treating her differently. She also feared that the rumor could have a detrimental effect on her job – a job that she desperately needed to keep as she was now single and relied on her Wal-Mart income to support herself. This news caused Plaintiff extreme emotional distress, anxiety and worry about returning to work the next day.

### *Upon Learning Of Ms. Whisenhunt's Wrongful Disclosure Of Her Most Sensitive Protected Private Health Information, Plaintiff Immediately Took Every Opportunity To Make A Series Of Internal Protected Complaints Through Official Wal-Mart Channels Regarding Ms. Whisenhunt's Unauthorized Disclosure Of Her HIV Positive Status*

25. The very next day, or on about June 21, 2013, Plaintiff returned to work and promptly went to meet with Store Manager Tammy Cooper to discuss this wrongful disclosure

and demand that an investigation be conducted. Ms. Cooper and Plaintiff discussed how this disclosure may have occurred and who may have been responsible. In accordance with Plaintiff's request for an investigation into the matter, Ms. Cooper initiated an internal investigation, which determined that the only Wal-Mart Neighborhood Market employees who were authorized to know of Plaintiff's HIV positive status were Store Manager Tammy Cooper, Personnel Manager Christine (last name unknown), co-worker Ramona Vuckovic and the Overnight Shift Manager, Connie Whisenhunt. After a few calls, it was determined that Ms. Whisenhunt remained as the only possible source of the shocking unauthorized disclosure of Plaintiff's protected private health information to co-workers who had no need to know.

26. The following day, on or about June 22, 2018, Plaintiff came into work and found a note under her computer keyboard from an unidentified co-worker or co-workers indicating a need to speak with her. Before she left work for the day, Plaintiff left her phone number on this note. Later that evening, two of Plaintiff's co-workers whom she hardly knew, Brenda Allen and Sophia Johnson, one or both of whom had left the mysterious note for Plaintiff earlier that day. They showed up at Plaintiff's home because they were aware of the vicious rumors being spread by Ms. Whisenhunt around the store that Plaintiff "had AIDS" and they felt compelled to alert Plaintiff. Ms. Allen and Ms. Johnson confirmed to Plaintiff that rumors were spreading like wildfire around the Wal-Mart Neighborhood Market that Plaintiff "had AIDS" and that these rumors were being spread by Ms. Whisenhunt and as a result, were now being re-disclosed by other Wal-Mart employees. Ms. Allen and Ms. Johnson also indicated to Plaintiff that as a result of Ms. Whisenhunt spreading these rumors, Plaintiff's fellow employees were now laughing about Plaintiff's disability and discussing how they did not want to work with her because she was HIV positive. Ms. Allen or Ms. Johnson also confirmed that it was Ms. Whisenhunt who

had revealed Plaintiff's alleged "AIDS" status to her personally in approximately May 2013, and that another employee, Misty Reynolds, was also continuing to tell other employees about the rumor.  The two co-workers explained that the environment at the store was very negative and they braced Plaintiff for a very unwelcome reception when she returned to work.  At the time, Plaintiff was so distraught, shocked and overwhelmed by this news that she was hardly able to respond.  She merely denied that she had "AIDS" and asked Ms. Allen and Ms. Johnson to leave. Plaintiff was in shock and disbelief that her worst fears regarding her carefully guarded, highly-sensitive private health information had come to pass, all because she had made the mistake of placing her trust in Wal-Mart to safeguard this information in accordance with its obligations under federal and state law.

27.     Now fully recognizing the severity of the damage caused by Ms. Whisenhunt's disclosure, Plaintiff filed complaints with every single Wal-Mart entity she could think of, including her Store Manager, Tammy Cooper, the Wal-Mart Ethics Hotline, Human Resources and even Theft Prevention.  Immediately upon her return to work the following day, on or about June 23, 2013, Plaintiff promptly called the Wal-Mart Ethics Hotline and filed an official complaint in connection with Ms. Whisenhunt's wrongful disclosure of her HIV positive status (Complaint No. #WMT-12-06-2669 PIN-7C7E).

28.     The following day, on or about June 24, 2013, although she was too distraught to return to work in light of the negative reception at work she had faced the previous day and feared being confronted by Ms. Whisenhunt, Plaintiff called Laura Brooks, the Market Human Resource Manager ("MHRM") for her store and left a message notifying her of the situation and entreating her help in righting it.

29.     The day after that, on or about June 25, 2013, Plaintiff again met with Store Manager Tammy Cooper to discuss the situation.  Ms. Cooper informed Plaintiff that she was continuing the investigation and that she was collecting statements from fellow employees for review.  Ms. Cooper asked Plaintiff to provide a statement about this incident for the investigation.  Plaintiff promptly cooperated and returned her written statement to MHRM Laura Brooks.  Ms. Allen and Ms. Johnson also provided statements and participated in the investigation into Ms. Whisenhunt's shocking disclosure of Plaintiff's protected private health status.

30.     Plaintiff also personally made a complaint to Joe Netzler, the Market Asset Protection Manager ("MAPM") for the Wal-Mart Neighborhood Market.  Although Mr. Netzler did not seem to be particularly concerned about this situation, he did ask Plaintiff to provide a written statement, which she promptly did.

31.     Recognizing that she would never feel comfortable or be accepted by her co-workers as before, Plaintiff's primary wish was to be transferred to another Wal-Mart store so she could start fresh and work in an environment where her privacy was protected.  She also hoped that Wal-Mart would fully investigate and take appropriate corrective action with respect to Ms. Whisenhunt.

### *Wal-Mart Conducted A Sham Investigation, Swept Ms. Whisenhunt's Illegal Disclosure Under the Rug And Failed to Take Any Corrective Action Whatsoever, Thereby Ratifying Ms. Whisenhunt's Wrongful Violation of Plaintiff's Privacy Rights*

32.     Although Plaintiff went through every single official and unofficial Wal-Mart complaint channel she could think of in requesting an investigation and appropriate corrective action in connection with Ms. Whisenhunt's outrageous disclosure, Wal-Mart *never* contacted

her regarding the outcome of *any* of these investigations, nor did anyone else at Wal-Mart ever inform Plaintiff whether any corrective action had been taken.

33.     On or about the week of July 8, 2013, Ms. Johnson was told that the investigation into Ms. Whisenhunt's disclosure of Plaintiff's most personal private health information was completed, and that Ms. Whisenhunt would get to keep her job.  She informed Plaintiff of this fact, who was very upset and could not believe that Wal-Mart's purported "investigation" had absolved Ms. Whisenhunt of responsibility.

34.     Despite multiple statements and corroboration from Store Manager Tammy Cooper, Ms. Brenda Allen and Ms. Sophia Johnson, among others, that Ms. Whisenhunt was the Wal-Mart employee responsible for the unauthorized, illegal disclosure of Plaintiff's HIV positive status to her co-workers who had no need to know, Wal-Mart's perfunctory, sham investigation was merely a cover-up designed to sweep the matter under the rug.  Apparently, Wal-Mart's investigation found that Ms. Whisenhunt denied having disclosed Plaintiff's medical condition to any of her co-workers, and Wal-Mart conveniently chose to believe her.  Wal-Mart claimed it took "appropriate action," including additional HIPAA training for certain managerial associates at the Wal-Mart Neighborhood Market, but even to the extent this is true, the damage had already been done.  Wal-Mart later even falsely suggested that perhaps it was Ms. Allen or Ms. Johnson, rather than Ms. Whisenhunt, who had made the inappropriate disclosure regarding Plaintiff's HIV positive status.  Not only is this false, but impossible, because Plaintiff had never informed either of these co-workers of her HIV positive status.

35.     While upon information and belief, Ms. Allen and Ms. Johnson were ultimately transferred to other Wal-Mart locations because they themselves had faced retaliation for participating in the investigation into Ms. Whisenhunt's disclosure, neither Plaintiff nor Ms.

Whisenhunt were transferred.  As far as Plaintiff is aware, Wal-Mart did not take *any* corrective action with respect to Ms. Whisenhunt, and to the extent it claims it did so, any such corrective action clearly proved ineffective and only emboldened her to further discriminate and retaliate against Plaintiff, as discussed *infra*.

36.     In fact, Wal-Mart allowed Ms. Whisenhunt to keep her job and in doing so, ratified her violation of federal and state law, as well as Wal-Mart's own policies regarding private health information.

### *Wal-Mart Rewarded Connie Whisenhunt By Making Her Plaintiff's Direct Supervisor, And She Immediately Initiated A Vicious Campaign of Retaliation And Harassment Against Plaintiff For Her HIV Positive Status And For Making Protected Complaints Protesting Ms. Whisenhunt's Illegal Disclosure Of Her Protected, Private Health Information*

37.     Although Plaintiff dreaded returning to work in light of her co-workers' negative reaction because they had learned of her HIV positive status, she nevertheless returned to Wal-Mart because she desperately needed to keep her job.

38.     While she had earlier been accepted as "part of the team" and treated like an equal, the way her co-workers treated her following her return could not have been more different.  Plaintiff's co-workers began treating Plaintiff life a pariah.  Ostracizing her, they stopped making eye contact and avoided speaking to Plaintiff, would no longer give her a hug in greeting, and did not invite her eat lunch with them, as they previously had.  Plaintiff was heartbroken and deeply emotionally distressed due to this state of affairs.  However, she was even more scared of running into Ms. Whisenhunt.

39.     Instead of disciplining or terminating Ms. Whisenhunt, Wal-Mart soon made the inexplicable decision of transferring her from the night shift to the morning shift – the same shift that Plaintiff worked – and installed her Plaintiff's direct supervisor.  Despite her multiple

protected complaints and proof that it was Ms. Whisenhunt who had spread rumors that she "had AIDS" to other employees, Plaintiff was now forced to work under Ms. Whisenhunt's supervision day in, day out.  In effect, Wal-Mart rewarded Ms. Whisenhunt for her illegal disclosure by placing her in a position of power over Plaintiff.

40.     From this new position of power, Ms. Whisenhunt began a vicious campaign of discrimination and retaliation against Plaintiff for (i) being HIV positive and (ii) making a series of protected complaints against Ms. Whisenhunt for outrageously and wrongfully disclosing Plaintiff's HIV positive status.

41.     Plaintiff noticed a significant difference in the way her co-workers treated her when Ms. Whisenhunt was present.  Upon information and belief, Ms. Whisenhunt forbid other employees, including Ms. Allen and Ms. Johnson, from speaking with Plaintiff and told them that if they spoke with Plaintiff, they would receive a disciplinary write-up.  On at least one occasion, Ms. Whisenhunt instructed Ms. Johnson not to come to the backroom, where Plaintiff worked, or to speak to her.  When Ms. Johnson did come to try to speak with Plaintiff, Ms. Whisenhunt followed her.

42.     Ms. Whisenhunt went out of her way to create a hostile work environment for Plaintiff, in the hopes that she might quit.

43.     Plaintiff, who is Mormon and regularly attends church on Sundays, was now told that instead of taking Sundays and Mondays off, she would now need to work on Sundays and instead take Mondays and Tuesdays off from work.  In vindictively and arbitrarily changing her schedule in this manner, Wal-Mart was not only retaliating against her, but also interfering with her constitutional rights to free exercise of her religion in violation of the First Amendment to the United States Constitution.

44.     While Plaintiff had previously received only a few minor disciplinary write-ups, or "Coachings," in Wal-Mart parlance, in years past, Ms. Whisenhunt and other Wal-Mart Neighborhood Market Management now began giving her numerous, meritless, trumped-up "Coachings" for alleged infractions that were in no way her fault.  On one such occasion, in approximately December 2013, Ms. Whisenhunt gave Plaintiff a "Coaching" in which she faulted Plaintiff for allegedly not handling a shipment of bananas appropriately, even though this shipment came in after she had already left for the day.  However, the two employees directly responsible for this banana snafu, Linzie (last name unknown) and the Overnight Support Manager, Eric (last name unknown), were not disciplined.  Wal-Mart later "cancelled" this "Coaching" from her record, admitting that she could not have been the responsible employee, but only after Plaintiff complained through the Company's "Open Door" process.  However, the only reason this retaliatory "Coaching" was ultimately cancelled was that a new, outside manager had joined the store and unlike previous management, including Ms. Whisenhunt, took Plaintiff's complaint seriously and fully investigated the incident.

45.     Ms. Whisenhunt also recruited other Wal-Mart employees to engage in this discrimination on the basis of Plaintiff's disability and in retaliation for making protected complaints protesting Ms. Whisenhunt's illegal disclosure.  On other occasions, Ms. Whisenhunt and others, including Assistant Manager Jeanette (last name unknown) gave Plaintiff "Coachings" for allegedly not doing her work, even though at this point, Plaintiff successfully was doing the work of two people because Ms. Whisenhunt had given her additional responsibilities but at the same time took away one of her support personnel in an effort to set Plaintiff up for failure and possible termination.

46.     Wal-Mart further retaliated against Plaintiff for exercising her rights under the Americans with Disabilities Act by taking time off from work for health issues she suffered as a result of her disability.  Plaintiff received a write-up for five (5) "unexcused" absences within the months September 2013 through February 2014.  These were the six months of work immediately following Plaintiff's return to work after the unlawful disclosure of her HIV status.  Far from being "unexcused," Plaintiff had called in sick on each of these occasions with what was later determined to be meningitis.  She had called Wal-Mart to report that she would be absent.  She had also previously informed her managers that she had a higher tendency to get sick due to her compromised immune system from HIV.  Nevertheless, Wal-Mart considered the absences unexcused and gave her written disciplinary action for them, providing further evidence of Wal-Mart's discriminatory and retaliatory conduct toward Plaintiff.

47.     Despite all this retaliation, harassment and pretextual disciplinary write-ups, Plaintiff was dedicated to Wal-Mart and continued to work extremely hard, regularly coming in at 5:00 A.M. and often working on her feet all day until as late as 5:00 P.M. or 6:00 P.M.

48.     While she was appalled that Wal-Mart had done nothing to either appropriately discipline Ms. Whisenhunt nor intercede to protect her from this ongoing harassment, by this point, Plaintiff was so stressed, anxious and emotionally distressed about going to work every day and facing constant discrimination and retaliation from Ms. Whisenhunt and others, that all she wanted was to be transferred to another Wal-Mart store.  Yet Wal-Mart failed to grant her even this small reprieve.  By writing her up for countless trumped-up disciplinary "Coachings," Ms. Whisenhunt and other Wal-Mart management were preventing her from receiving a transfer to another Wal-Mart store, because pursuant to Wal-Mart policy, employees with a certain number of "Coachings" are ineligible for transfer.

18

49.     When Plaintiff later complained that Ms. Whisenhunt and others were retaliating against her for making protected complaints, Wal-Mart claimed it had conducted an investigation but failed to uncover any facts suggesting that Plaintiff had faced any such retaliation, despite a plethora of evidence to the contrary.

***Because Wal-Mart Failed to Take Any Corrective Action And Ms. Whisenhunt And Others Continued Subjecting Plaintiff To A Hostile Work Environment On A Daily Basis, Plaintiff Filed Her First Charge of Discrimination With The Equal Employment Opportunity Commission (EEOC) In April 2014***

50.     Unfortunately, Ms. Whisenhunt's campaign of retaliation and harassment against Plaintiff only worsened with time.  Plaintiff had by this time given up hope that without outside interference, Wal-Mart would step in on her behalf to stop Ms. Whisenhunt's harassment and hostility.

51.     Finally, by Spring of 2014, Plaintiff felt she had no other option than to file a formal Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC). Accordingly, on April 7, 2014, Plaintiff filed Charge of Discrimination, in which she formally complained that she had been discriminated and retaliated against on the basis of her disability and subjected to a hostile work environment all due to Ms. Whisenhunt's illegal disclosure of her protected private health information and her subsequent retaliation against Plaintiff for having made protected written and verbal internal complaints in connection with this breach of her privacy rights.

52.     Despite Wal-Mart's adamant denials of any wrongdoing, based on the evidence presented, the EEOC eventually found in its official Determination of Plaintiff's Charge that Defendant Wal-Mart was indeed at fault:

[The Commission has] considered all the evidence obtained during the investigation and find[s] that there is reasonable cause to believe that there is a

> violation of the ADA in that [Plaintiff] was harassed because of her disability and subjected to retaliatory disciplinary action after complaining.  The Commission further finds a violation of the ADA in that [Wal-Mart] disclosed [Plaintiff's] disability to co-workers without the right to know.

(EEOC Charge of Discrimination Determination, May 12, 2015[2]).  In an effort to bring the parties together to resolve this matter so that Plaintiff could continue working at Wal-Mart free of harassment, the EEOC invited the parties to participate in a conciliation process.  Although Plaintiff was eager to participate in a conciliation with her employer in order to move forward and continue her career, Wal-Mart declined to participate in a conciliation with Plaintiff.

53.     Instead, following the filing of her first EEOC Charge of Discrimination, Wal-Mart illegally engaged in further, additional retaliation against Plaintiff, continuing to harass and write her up for merit-less disciplinary "Coachings," which were mere pretext for its illegal discrimination and retaliation against her on the basis of her disability and in flagrant violation of her rights under the Americans with Disabilities Act and the Colorado Anti-Discrimination Act.

### *Defendant Wal-Mart's Relentless Harassment, Discrimination And Retaliation Caused Plaintiff To Suffer Severe Adverse Health Consequences*

54.     Ms. Whisenhunt's outrageous betrayal of Plaintiff's HIV positive status, her spreading rumors around the Walmart Neighborhood Market that Plaintiff "had AIDS," her and Wal-Mart's ongoing retaliation against Plaintiff for having made a series of protected internal and external complaints regarding this unauthorized disclosure and Wal-Mart's sham cover-up investigation and failure to take any action whatsoever to protect Plaintiff – all of this took a severe, adverse toll on Plaintiff's already-fragile health.  Plaintiff was isolated, ignored and frequently faced open hostility from her co-workers, her supervisor Connie Whisenhunt and other management.

---

[2] Plaintiff's EEOC Charge of Discrimination number has been omitted to protect her privacy.

55.     Although Plaintiff had remained in stable, if not perfect, health from the time she began treatment for HIV until mid-2013, unfortunately Plaintiff's health deteriorated rapidly and dramatically in the months following Ms. Whisenhunt's illegal disclosure of Plaintiff's HIV positive status to co-workers who had no need to know.

56.     Plaintiff's left leg suddenly went numb shortly after Ms. Whisenhunt's wrongful disclosure of her HIV positive status.  Plaintiff was at work when this occurred and indicated to Assistant Manager Ben (last name unknown) that she could not feel her left leg and believed it was broken.  In response, this manager callously told Plaintiff "there's people waiting back there" and that she needed to get back to work.  Because she was forced to work on her feet all day, her leg was later placed in a cast.  Ultimately, Plaintiff was diagnosed with Chronic Regional Pain Syndrome (CRPS) in her left leg, from which she still suffers.

57.     In the Fall of 2013, Plaintiff came down with meningitis, which can be a consequence of HIV and is often exacerbated by stress.  She was forced to take some days off from work due to her illness, which Wal-Mart characterized as "unexcused" absences in its efforts to retaliate against her, as discussed *supra*.  Her meningitis became so acute that in approximately February or March of 2014, Plaintiff was required to be hospitalized for approximately ten days and was forced to take a total of three weeks off as doctor-approved medical leave pursuant to the Family Medical Leave Act of 1993, as amended, 28 U.S.C. 2601 *et seq*. ("FMLA").  Upon her return to work, Lindsay (last name unknown), a new employee, told Plaintiff that the managers had told her that Plaintiff would not be returning to work and that Plaintiff's job as Receiving/ Claims Clerk on the morning shift was now hers.  It became apparent to Plaintiff that Defendant Wal-Mart did not want her there and was just waiting for the right opportunity to rid itself of her one way or another.

58.     During the rest of 2013 and throughout 2014, Plaintiff was getting sick constantly. She had pain everywhere and was diagnosed with fibromyalgia caused by the work-related stress she faced on a daily basis.  She also broke out in shingles for the very first time in her life, and now suffers from permanent nerve damage as a result.  Plaintiff also began having back problems, and she now requires surgery to insert a metal rod in her lower back.

59.     The unceasing emotional strain, stress and anxiety weighing on Plaintiff was enormous.  She experienced constant anxiety attacks and would throw up on a regular basis before or on her way to work.  She was prescribed Xanax, a potent benzodiazepine, to treat her anxiety, even though she had never previously required any anti-anxiety medications in her entire life.  On one occasion, she experienced a panic attack at work so severe that she collapsed, completely overwhelmed with stress and anxiety.

60.     Plaintiff's blood pressure also regularly sky-rocketed as high as 200 each time she needed to go to work.  At one point, one of her physicians made a home visit and asked her, "Why is it that every time you have to go to work your blood pressure goes up?"

61.     Plaintiff gained a significant amount of weight due to the extreme stress she was experiencing, which also contributed to her deteriorating health.

62.     Each day, Plaintiff would wake up and fight an inner battle – physically and emotionally dreading her tormentors and the hostile work environment she faced at the Wal-Mart Neighborhood Market, but knowing she could not afford to quit or not show up.  Nevertheless, she continued to show up each day and persevere in the ever more futile hope that Wal-Mart would finally live up to its core value of "Respect for the Individual" and find a solution for her so that she could continue doing her job free of harassment, discrimination and retaliation.

### ***Walmart's Wrongful, Retaliatory Termination of Plaintiff's Employment***

63.     In approximately October 2014, Plaintiff needed to take doctor-approved medical leave pursuant to the FMLA to undergo surgery on her thumb.  Plaintiff had thumb surgery, but remained out on FMLA leave upon her doctor's recommendation in order to work with her doctors to adjust her medication, alleviate stress and regain her health.

64.     Unfortunately, during this time she was hospitalized again for meningitis, and when she returned home, she was also suffering from shingles, throwing up and unable to eat. Plaintiff's health had completely collapsed due to the hostile work environment to which she was subjected on a daily basis by Wal-Mart.

65.     Unfortunately, although she had been working diligently with her doctors to regain her health so she could return to work, by mid-December 2014, Plaintiff's doctors felt that she was not yet well enough to safely return to work.  As her medical leave was scheduled to expire on Christmas Eve, instead of attempting to discuss with Plaintiff when she might be able to return to work, Defendant Wal-Mart sent Plaintiff a letter indicating that she needed to return to work the following day or she would be terminated.

66.     Plaintiff felt in a daze, was recovering from meningitis and shingles, taking new medications, throwing up and in no condition to leave the house, much less go to work. Accordingly, she had a friend deliver a note to Defendant Wal-Mart that night indicating she was still too ill to return to work.  However, in doing so, Plaintiff did not intend to terminate her employment.  She simply needed more time to regain her health and hoped that she would be able to go return to work the following month.  In fact, at that time in late December 2014, Plaintiff was so ill she did not even recall sending this note to Defendant Wal-Mart.  She recalled only that several weeks later, in January 2015, when she was feeling better again, she called Sedgwick, a company that contracted with Wal-Mart to manage employee leave time, to find out

when she could return to work and was informed without any more details that her employment had been terminated in late December 2014 or January 2015.

67.     In sending Plaintiff what amounted to an ultimatum to return to work or face summary termination on Christmas Eve 2014, Defendant Wal-Mart gave Plaintiff no option but to terminate her employment (which she did not even remember doing because she was so ill). In fact, Defendant Wal-Mart wrongfully terminated, or in the alternative, constructively discharged, Plaintiff because of its discrimination against her on the basis of her HIV positive status and in retaliation for lodging multiple internal protected complaints and a Charge of Discrimination with the EEOC against Wal-Mart for its unlawful disclosure and dissemination of her HIV positive status and its subsequent retaliation.

68.     Following her wrongful termination, Plaintiff timely filed a second Charge of Discrimination, in connection with her termination, with the EEOC, which issued her a Right to Sue Notice on August 15, 2018.

69.     Defendant's wrongful, illegal and vindictive actions, described herein, have caused Plaintiff to suffer devastating financial, emotional, mental, social and reputational damages, and have severely and permanently harmed her already compromised health.

## V. STATEMENT OF CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Americans With Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* – Discrimination Based On Non-Voluntary Disclosure of Medical Information, Failure to Accommodate and Hostile Work Environment**

70.     Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

71.     As a woman living with Human Immunodeficiency Virus (HIV), Plaintiff has a recognized disability and is a member of the class of persons protected under the Americans with Disabilities Act.

72.     Defendant is an "employer" within the meaning of the Americans with Disabilities Act.

73.     Defendant treated Plaintiff less favorably than her similarly situated co-workers without a disability.  Defendant subjected Plaintiff to adverse treatment in the terms and conditions of her employment because of her perceived or actual disability, including but not limited to:

> (i)     the unauthorized and unlawful disclosure of Plaintiff's most sensitive, private, protected personal health information, namely her HIV positive status, by Connie Whisenhunt to other Wal-Mart employees who had no need to know;
>
> (ii)    Wal-Mart management's failure to accommodate Plaintiff's reasonable requests for needed, doctor-approved sick time off from work for illnesses caused by and/or related to her HIV, a recognized disability, and its decision to write her up for "unapproved absences" for these sick days despite the fact that Plaintiff had called and notified Wal-Mart management in advance that she was too ill too work;
>
> (iii)   Connie Whisenhunt and other Wal-Mart management subjecting Plaintiff to a hostile work environment, as described herein; and
>
> (iv)    Wal-Mart's wrongful termination, or in the alternative constructive discharge, of Plaintiff's employment, in part because she is HIV positive.

74.     At all pertinent times, Plaintiff performed the functions of her job competently.

75.     Plaintiff's perceived or actual disability was a motivating factor in Defendant's decision to terminate, or in the alternative constructively discharge, Plaintiff.  Defendant's asserted reasons for terminating Plaintiff are mere pretext for illegal discrimination.

76.     Defendant is liable for the acts and/or omissions of its agents and employees.  Defendant, either directly or by and through its agents, discriminated against Plaintiff on the basis of her perceived or actual disability and proximately caused her severe injuries, damages, and losses.

77.     Defendant's acts and conduct were committed with malice or with reckless indifference to Plaintiff's federally protected rights within the meaning of the Americans with Disabilities Act.

## SECOND CLAIM FOR RELIEF

### Americans With Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* – Retaliation

78.     Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

79.     Plaintiff believed in good faith that Defendant discriminated against her on the basis of her perceived or actual disability, as described herein.

80.     Plaintiff opposed Defendant's discriminatory treatment by reporting it internally to Wal-Mart Store Manager Tammy Cooper, the Wal-Mart Ethics Hotline, Human Resources and Theft Prevention.  Plaintiff subsequently also opposed Defendant's discriminatory treatment and retaliation against her for making internal complaints by filing a Charge of Discrimination with the EEOC.

81. As a direct result of Plaintiff's opposition to activities prohibited by the Americans with Disabilities Act, Defendant subjected Plaintiff to adverse treatment, including but not limited to:

(i) conducting a perfunctory, sham investigation into Connie Whisenhunt's shocking, unlawful disclosure of Plaintiff's most private, sensitive protected health information, namely her HIV positive status, in violation of multiple privacy protections under federal and state law, as well as Defendant Wal-Mart's own employee privacy policies; then inexplicably absolving Ms. Whisenhunt of responsibility despite a plethora of evidence pointing to her as the culprit, failing to take any corrective action whatsoever with respect to Ms. Whisenhunt and shortly thereafter installing Ms. Whisenhunt as Plaintiff's direct supervisor, thereby ratifying and rewarding her illegal disclosure of Plaintiff's private health information;

(ii) forcing Plaintiff to work in a hostile work environment which materially and adversely affected the terms and conditions of her employment, including but not limited to by writing Plaintiff up for numerous meritless, trumped up disciplinary "Coachings," in an effort to push her out or set her up for termination, and thereby preventing her from transferring to another Wal-Mart store; giving her additional responsibilities while at the same time taking away her support personnel in an effort to set her up for failure; arbitrarily switching her days off from Sunday and Monday to Monday and Tuesday, thereby preventing her from attending church and thereby violating her rights to the free exercise of her religion (Mormon); ostracizing and isolating her, instructing her co-workers not to speak with her, and generally treating Plaintiff like a pariah;

(iii) subjecting Plaintiff to disparate treatment because of her perceived or actual disability; and

(iv) subjecting her to efforts to adversely affect the terms and conditions of her employment, terminating her, and other discriminatory practices.

82.     Defendants' retaliation against Plaintiff arose out of, and was like and related to, the discrimination Plaintiff opposed while she was employed.

83.     Defendant is liable for the acts and omissions of its agents and employees. Defendant, either directly or by and through its agents, retaliated against Plaintiff and directly and proximately caused her severe injuries, damages, and losses.

84.     Defendant's conduct was engaged in with malice or with reckless indifference to the federally protected rights of Plaintiff within the meaning of the Americans with Disabilities Act.

## THIRD CLAIM FOR RELIEF

### Discrimination on the Basis of a Disability in Violation of the Colorado Anti-Discrimination Act, C.R.S. §§ 24-34-401, *et seq*.

85.     Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

86.     As a woman living with Human Immunodeficiency Virus (HIV), Plaintiff has a recognized disability and is a member of the class of persons protected under the Colorado Anti-Discrimination Act.

87.     Defendant is an "employer" within the meaning of the Colorado Anti-Discrimination Act.

88.     Defendant treated Plaintiff less favorably than her similarly situated co-workers without a disability.  Defendant subjected Plaintiff to adverse treatment in the terms and

28

conditions of her employment because of her perceived or actual disability, including but not limited to:

(v)     the unauthorized and unlawful disclosure of Plaintiff's most sensitive, private, protected personal health information, namely her HIV positive status, by Connie Whisenhunt to other Wal-Mart employees who had no need to know;

(vi)    Wal-Mart management's failure to accommodate Plaintiff's reasonable requests for needed, doctor-approved sick time off from work for illnesses caused by and/or related to her HIV, a recognized disability, and its decision to write her up for "unapproved absences" for these sick days despite the fact that Plaintiff had called and notified Wal-Mart management in advance that she was too ill too work;

(vii)   Connie Whisenhunt and other Wal-Mart management subjecting Plaintiff to a hostile work environment, as described herein; and

(viii)  Wal-Mart's wrongful termination, or in the alternative constructive discharge, of Plaintiff's employment, in part because she is HIV positive.

89.     At all pertinent times, Plaintiff performed the functions of her job competently.

90.     Plaintiff's perceived or actual disability was a motivating factor in Defendant's decision to terminate, or in the alternative constructively discharge, Plaintiff.  Defendant's asserted reasons for terminating Plaintiff are mere pretext for illegal discrimination.

91.     Defendant is liable for the acts and/or omissions of its agents and employees.  Defendant, either directly or by and through its agents, discriminated against

Plaintiff on the basis of her perceived or actual disability and proximately caused her severe injuries, damages, and losses.

92.     Defendant's acts and conduct were committed with malice or with reckless indifference to Plaintiff's state protected rights within the meaning of the Colorado Anti-Discrimination Act.

## FOURTH CLAIM FOR RELIEF

### Retaliation in Violation of the  Colorado Anti-Discrimination Act, C.R.S. §§ 24-34-401, *et seq*.

93.     Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

94.     Plaintiff believed in good faith that Defendant discriminated against her on the basis of her perceived or actual disability, as described herein.

80.     Plaintiff opposed Defendant's discriminatory treatment by reporting it internally to Wal-Mart Store Manager Tammy Cooper, the Wal-Mart Ethics Hotline, Human Resources and Theft Prevention.  Plaintiff subsequently also opposed Defendant's discriminatory treatment and retaliation against her for making internal complaints by filing a Charge of Discrimination with the EEOC.

81.     As a direct result of Plaintiff's opposition to activities prohibited by the Colorado Anti-Discrimination Act, Defendant subjected Plaintiff to adverse treatment, including but not limited to:

(i)   conducting a perfunctory, sham investigation into Connie Whisenhunt's shocking, unlawful disclosure of Plaintiff's most private, sensitive protected health information, namely her HIV positive status, in violation of multiple privacy protections under federal and state law, as well as Defendant Wal-Mart's own employee privacy

policies; then inexplicably absolving Ms. Whisenhunt of responsibility despite a plethora of evidence pointing to her as the culprit, failing to take any corrective action with respect to Ms. Whisenhunt and shortly thereafter installing Ms. Whisenhunt as Plaintiff's direct supervisor, thereby ratifying and rewarding her illegal disclosure of Plaintiff's private health information;

(ii) forcing Plaintiff to work in a hostile work environment which materially and adversely affected the terms and conditions of her employment, including but not limited to by writing Plaintiff up for numerous meritless, trumped up disciplinary "Coachings," in an effort to push her out or set her up for termination, and thereby preventing her from transferring to another Wal-Mart store; giving her additional responsibilities while at the same time taking away her support personnel in an effort to set her up for failure; arbitrarily switching her days off from Sunday and Monday to Monday and Tuesday, thereby preventing her from attending church and violating her rights to the free exercise of her religion (Mormon); ostracizing and isolating her, instructing her co-workers not to speak with her, and generally treating Plaintiff like a pariah;

(iii) subjecting Plaintiff to disparate treatment because of her perceived or actual disability; and

(iv) subjecting her to efforts to adversely affect the terms and conditions of her employment, terminating her, and other discriminatory practices.

82.    Defendants' retaliation against Plaintiff arose out of, and was like and related to, the discrimination Plaintiff opposed while she was employed.

83.    Defendant is liable for the acts and omissions of its agents and employees. Defendant, either directly or by and through its agents, retaliated against Plaintiff and

directly and proximately caused her severe injuries, damages, and losses.

84. Defendant's conduct was engaged in with malice or with reckless indifference to the federally protected rights of Plaintiff within the meaning of the Colorado Anti-Discrimination Act.

WHEREFORE, Plaintiff Jane Doe respectfully requests that this Court enter judgment in her favor and against Defendant Wal-Mart Stores, Inc., and award her all relief as allowed by law, including, but not limited to the following:

a. Declaratory, injunctive, and other equitable relief, as appropriate;

b. Actual economic damages as established at trial;

c. Compensatory damages, including, but not limited to those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

d. Punitive/exemplary damages for all claims as allowed by law in an amount to be determined at trial;

e. Liquidated damages for all claims as allowed by law in an amount to be determined at trial;

f. Pre-judgment and post-judgment interest at the highest lawful rate;

g. Attorney's fees and costs;

h. An apology issued to Plaintiff by Defendant Wal-Mart Stores, Inc.;

i. The implementation of policy changes by Defendant Wal-Mart Stores, Inc. designed to prevent future breaches of HIPAA and protect employees' privacy; and

j. Such further relief as allowed by law or as justice requires.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**.

DATED this 13th day of November 2018.

CIVIL RIGHTS & EMPLOYMENT LAW ADVOCATES, LLC

*s/ Eudoxie Dickey*
Eudoxie (Dunia) Dickey
2300 Walnut St. #123
Denver, CO 80205
(303) 395-9150
CivilRightsAdvocatesLLC@gmail.com

*Attorney for Plaintiff*